NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JEREMIAH MIGUEL PEREZ,

                      Petitioner,

          v.

STATE OF ALASKA,

                     Respondent.

Court of Appeals No. A-13666
Trial Court No. 3AN-19-04280 CR

O P I N I O N

No. 2736 — November 18, 2022

Petition for Review from the Superior Court, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: John M. Murtagh, Attorney at Law, Anchorage, under contract with the Office of Public Advocacy, for the Petitioner. Hazel C. Blum, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Clyde "Ed" Sniffen Jr., Acting Attorney General, Juneau, for the Respondent.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD, writing for the Court.
Judge HARBISON, concurring.

In May 2019, an Anchorage grand jury indicted Jeremiah Miguel Perez and eight co-defendants on an eighty-three count indictment alleging a series of felony property crimes. At Perez's arraignment, the trial court appointed the Alaska Public

Defender Agency to represent him. Despite this appointment, the Public Defender Agency did not assign an individual attorney to represent Perez for over five months. During those five months, the court repeatedly continued Perez's case and tolled the Alaska Criminal Rule 45 speedy trial clock at the request of various assistant public defenders who were in the courtroom when the court called Perez's case. Three of those public defenders noted that there was a potential conflict of interest in the Agency's representation of Perez because the Agency had also been appointed to represent some of Perez's co-defendants. Over time, the Agency withdrew from representing Perez's co-defendants so that ultimately the Agency was only representing Perez.

In October 2019, an individual assistant public defender finally filed an entry of appearance in Perez's case. Approximately a month later, the Public Defender Agency moved to withdraw, citing a conflict of interest, and a contract attorney with the Office of Public Advocacy entered his appearance. That attorney subsequently filed a motion to dismiss under Criminal Rule 45. In the motion, the attorney asserted that the various assistant public defenders who had requested continuances in Perez's case were not authorized to do so because of the "obvious" conflict of interest caused by the Agency's simultaneous representation of multiple co-defendants. The attorney argued that the trial court had therefore erred in tolling Perez's Rule 45 time based on those continuance requests, and that Perez's case should be dismissed with prejudice because the Rule 45 time for a speedy trial had otherwise run.

The trial court denied the motion to dismiss, finding that the various public defenders had apparent authority to waive Rule 45 time on Perez's behalf. This petition for review followed.

Because the record in this case affirmatively indicates that the tolling of Rule 45 was done with Perez's knowledge and consent, we conclude that the motion to dismiss was properly denied. We nevertheless granted this petition and are issuing this

decision to ensure that trial courts recognize their own duty to act when a defense agency does not act diligently to enter an appearance or resolve a potential conflict.

As we emphasized in a recent opinion, "The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."[1] Thus, when a trial court becomes aware that a defendant who is represented by public counsel has not been assigned an individual attorney, the trial court must take affirmative steps to ensure that the situation is immediately rectified. Likewise, when the Public Defender Agency informs a trial court that it may have a conflict of interest, the court should actively monitor the case to ensure that the potential conflict is resolved, or substitute counsel appointed, within a reasonable period of time.

*Background facts and proceedings*

On May 2, 2019, an Anchorage grand jury returned an eighty-three count indictment. The indictment charged nine defendants, including Perez, with a series of felony thefts and burglaries that resulted in over $25,000 worth of stolen property. Perez was arraigned on the twenty-six counts that pertained to him on May 6, 2019. At the arraignment, the trial court appointed the Alaska Public Defender Agency to represent Perez. The assistant public defender who was present at that arraignment waived reading of the indictment and advisement of rights and entered not guilty pleas on Perez's behalf.

On May 28, the grand jury returned a supplemental indictment in the nine-co-defendant case. Perez was arraigned on the additional count that pertained to him on May 31, 2019. The assistant public defender who was present at the arraignment informed the court that the Agency had been appointed to represent multiple co-

---

[1] *Sackett v. State*, 518 P.3d 289, 292 (Alaska App. 2022) (quoting *Avery v. Alabama*, 308 U.S. 444, 446 (1940)).

defendants and that there was an ongoing "evaluation of the conflict" to determine which case the Agency would retain.

On June 10, the trial court conducted the first pretrial conference. Five of the nine co-defendants were present. (The other four co-defendants had outstanding bench warrants.) Three of the five co-defendants were still represented by the Public Defender Agency. No entry of appearance had been filed for Perez. At this point, Perez had been in custody for more than a month on this case.[2]

The assistant public defender who was present at the pretrial conference informed the court that the Agency was currently appointed to represent Perez and two other co-defendants (Blake Millhouse and William Ratliff), but there were conflict issues with the multiple defendants that would need to be resolved. The attorney noted that both Millhouse and Ratliff had been assigned assistant public defenders but Perez had not yet been assigned an attorney. The attorney suggested that the cases be set for the next available pretrial conference. The court responded that the next available conference was July 8, and that 39 days had run under Rule 45. The attorney stated that this was "okay" with Ratliff, Perez, and Millhouse.

Perez was present in the courtroom when the assistant public defender said that Perez and the other co-defendants were "okay" with the continuance to July 8. Perez was also present when the court stated that 39 days of the Rule 45 speedy trial time had run and that the speedy trial time would toll until the next pretrial conference on July 8.

On July 8, the court held the next pretrial conference. At this point, the Public Defender Agency only represented two of the co-defendants — Perez and Ratliff.

---

[2]    We note that it appears from the record that Perez may have also been in custody at the same time on a separate, unrelated case.

(Conflict counsel had been appointed for Millhouse.) But there was still no entry of appearance for Perez. Perez had been in custody for two months on this case.

At the outset of the July 8 hearing, an assistant public advocate who was representing one of the other co-defendants informed the court that Perez appeared to be unrepresented. The judge then asked Perez if he had an attorney, and Perez responded, "Not so far, your Honor." Instead of taking affirmative steps to determine why Perez remained without an assigned attorney more than two months after his initial arraignment, the court simply "appointed" the Public Defender Agency (which had already been appointed) and asked that an attorney from the Agency go speak to Perez. The assistant public defender who was present apparently then spoke to Perez, and this attorney subsequently told the court that he was there "on behalf of Mr. Perez and Mr. Ratliff."

At the hearing, the attorneys for the other co-defendants complained about discovery issues and asked that the cases be continued until August 5, with Rule 45 time tolling. The assistant public defender representing Perez and Ratliff agreed to the continuance and the tolling of the time. There was no discussion of the potential conflict with the Public Defender Agency representing both Perez and Ratliff nor was there any discussion of the fact that there was still no individual attorney assigned to Perez's case.

The next pretrial conference was held on August 5. At that point, Perez had been in custody for 92 days on this case and still no attorney had entered an appearance on his behalf. Notably, by this time, the Public Defender Agency had withdrawn from representing Ratliff, and it appears that the Agency remained appointed only to Perez's case.

However, when the court called Perez's case, no attorney responded. Perez himself responded and informed the court that "for three months . . . nobody's here for me. I haven't had an attorney yet." The court agreed that the situation "need[ed] to be

fixed." After consulting the file, the court found that the Public Defender Agency had been appointed, and a note in the file said that there was a "conflict check" going on. An assistant public defender who was present for other matters agreed to speak with Perez.

Later in the hearing, the assistant public defender asked when the Agency had been appointed and whether the Agency already had a conflict at the time they were appointed. The attorney asserted that the Public Defender Agency could not waive Rule 45 time on Perez's behalf if it had a conflict, and she argued that the prior waivers may have been invalid. The court responded that it was not going to rule on any challenges to the prior Rule 45 waivers and that a motion should be filed if there was a disagreement with the court's calculation that only 39 days had run.

The court then ruled that it would continue all of the other cases until October 7 except for Perez's case, which would be scheduled for the following week so that the court could address the representation issue. Near the end of the hearing, the court repeated that Perez's case would be heard on August 12. The following exchange then occurred:

> *Attorney*: Judge, Mr. Perez now tells me he is comfortable waiving from today until the next court date.
>
> . . . .
>
> *Court*: Oh, do you want to come back next week?
>
> *Perez*: No.
>
> *Attorney*: Just for my purposes I claim that I don't believe — that we potentially have a conflict but my position has been he seems to understand what he's waiving and so he now takes the position he wants —

When the court announced that Perez's case would be continued until October 7 and that the Rule 45 time would be tolled, Perez spoke up, asking, "[W]here am I with time running right now?" The following exchange then took place:

*Court*:   I just heard that you're . . . comfortable waiving time and coming in with everyone else.

*Perez*:   Yeah, no, that's — that's right.   But I was asking where . . . am I at.

*Court*:   Yeah.   10/7, and oh, you're 39 days having run.   If that was your question.   Okay.

One week later, on August 12, 2019, the court entered a written order yet again appointing the Public Defender Agency as counsel for Perez.

The next pretrial conference took place on October 7.   At this point, Perez had been in custody for 155 days on this case.   Still no entry of appearance had been filed.

When the court called Perez's case, Perez responded, "I'm here."   The judge asked, "Who's his attorney?" and the district attorney replied that her office "[did] not have anybody listed in our system [as Perez's attorney]."   An assistant public defender then spoke up and told the court that the Public Defender Agency similarly did not have "any kind of file open for Mr. Perez."   The assistant public defender stated that she would "make sure we get a file before the next hearing."   The judge, who was the same judge who had presided over all of the other pretrial conferences, did not question the assistant public defender any further or take any affirmative steps to address the fact that, 155 days after arraignment, Perez was still without an assigned attorney.

Instead, the court took up the co-defendants' cases.   The attorneys representing the co-defendants requested a continuance until December 9.   The assistant public defender who had spoken to Perez informed the court that she would "go along with the parties on this."   She asked the court to give her a copy of both the order appointing the Public Defender Agency and the charging document.   The court concluded the hearing by stating, "It sounds like everyone's in agreement with a continued discovery hearing on December 9.   Time will toll."

– 7 –                                                    2736

On the following day, October 8, an assistant public defender entered an appearance for Perez.

On October 30, the Office of Public Advocacy and the Public Defender Agency entered into a stipulation, agreeing that the Office of Public Advocacy should be appointed to represent Perez based on a conflict of interest. (The nature of the conflict of interest was not identified.)

On November 4, a contract attorney with the Office of Public Advocacy entered his appearance in Perez's case. (The contract attorney was already assigned to represent Perez in a different case.)

At the December 9 hearing, Perez was present, but his attorney was still in another courtroom when the court called Perez's case with the co-defendants' cases. The attorneys for the co-defendants complained about various discovery issues and agreed to have the court set a special discovery hearing where the assigned prosecutor would be present. The hearing was set for January 17. With the agreement of the attorneys who were present, the court tolled the speedy trial time until that hearing. But the court did not acknowledge that Perez's attorney was not present. Instead, the court continued Perez's case to January 17 along with the other co-defendants without any input from Perez or his attorney.

Perez's attorney subsequently filed a written objection to the court continuing Perez's case and tolling the time in his attorney's absence. A status hearing was held on December 30. At that hearing, Perez's attorney agreed to waive Perez's Rule 45 time until the January discovery hearing. But the attorney indicated that he believed the prior waivers of Perez's Rule 45 time had been invalid based on the Public Defender Agency's apparent conflict of interest, and he indicated that he intended to file a motion to dismiss Perez's case for violation of his Rule 45 speedy trial right.

On February 5, Perez's attorney filed a motion to dismiss Perez's case under Rule 45. In the motion, Perez's attorney argued that the court was obligated to take affirmative steps at the first pretrial conference hearing (the June 10 hearing) to directly address the Public Defender Agency's failure to assign an attorney to Perez or to resolve its conflict issues. The attorney then argued that the court's failure to ensure that this situation was resolved meant that Perez was effectively unrepresented and he should therefore have been treated as an unrepresented party and directly advised of his right to a speedy trial and the effect of any consent to a continuance.[3] The attorney also argued that none of the attorneys from the Public Defender Agency were authorized to toll Rule 45 time on Perez's behalf because the Agency had a conflict of interest in Perez's case based on its representations of the co-defendants.

The trial court denied the motion to dismiss under Rule 45 in a written order. In the order, the court found that, at all relevant times, Perez was represented by the Public Defender Agency even though no individual attorney had filed an entry of appearance. The court also found that the assistant public defenders who were present at the pretrial conferences and able to consult with Perez had apparent authority to request a continuance and waive time on his behalf. Lastly, the court ruled that the speedy trial time was also tolled under Rule 45(d)(5), which allows for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance."

Perez's attorney moved for reconsideration, which the court denied. This petition for review then followed.

---

[3]   *See* Alaska R. Crim. P. 45(d)(2) ("A defendant without counsel shall not be deemed to have consented to a continuance unless the defendant has been advised by the court of the right to a speedy trial under this rule and of the effect of consent.").

*The trial court had a duty to take affirmative steps to resolve the representation issues in Perez's case*

We granted this petition for review because the record in this case reveals that both the Public Defender Agency and the trial court failed to act diligently to resolve obvious problems with Perez's representation. For over five months, Perez did not have an individual attorney assigned to his case. This meant that there was no attorney keeping track of his case between pretrial hearings, no attorney communicating with him outside these hearings, no attorney reviewing the discovery and discussing it with him, and no attorney assisting him with other pretrial matters such as bail.

We begin by recognizing the failure of the Public Defender Agency to take ownership over this case. The Public Defender Agency was appointed at Perez's initial arraignment on the indictment on May 6, 2019, and an attorney from the Agency represented Perez, waiving reading of the charges and advisement of his rights. For the next five months, no entry of appearance was filed — despite the fact that multiple Agency attorneys appeared before the court for Perez and assured the court that they would take steps to fix the problem. It appears that only the attorney at the October 7 hearing actually followed through on this promise, resulting in an entry of appearance being filed the very next day. It then took the Agency another three weeks to resolve a conflict issue with Perez and enter a stipulation for substitution of counsel with the Office of Public Advocacy.

There is no excuse for the fact that it took the Agency over five months to assign an individual attorney to Perez's case and another three weeks to find substitute counsel. We expect that the Public Defender Agency will take steps to revise its internal procedures and correct what went wrong in this case.

The key question in this petition, however, is whether the trial court had a duty to act to remedy this breakdown in the system (and ultimately, whether the remedy

for any failure to act, under the circumstances of this case, is a dismissal under Criminal Rule 45). We conclude that the trial court had an affirmative duty to act when it became clear that Perez had no attorney assigned to his case and that the conflict issues to which the Public Defender Agency attorneys alluded were not being timely resolved.

Article I, Section 11 of the Alaska Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to the assistance of counsel in all critical stages of a criminal prosecution.[4] Trial courts play an important role in safeguarding this constitutional right.

As the United States Supreme Court observed more than eighty years ago, "The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment."[5] Thus, a trial court's duty to appoint counsel "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case."[6] Likewise, a trial court's duty to appoint counsel is not discharged if the appointment did not result in an entry of appearance by an individual attorney who is actually assigned to the case.

Here, Perez was arraigned on the original indictment on May 6, 2019, and on a supplemental indictment a few weeks later. But when the first pretrial conference

---

[4]     Alaska Const. art. I, § 11; U.S. Const. amend. VI; *see also Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 199 (2008) ("[T]he right to counsel attaches at the initial appearance before a judicial officer." (citations omitted)).

[5]     *Avery v. Alabama*, 308 U.S. 444, 446 (1940); *see also United States v. Cronic*, 466 U.S. 648, 654 n.11 ("Assistance begins with the appointment of counsel, [but] it does not end there. In some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided." (citations omitted)).

[6]     *Powell v. Alabama*, 287 U.S. 45, 71 (1932); *see also McMann v. Richardson*, 397 U.S. 759, 771 (1970) ("[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel.").

hearing was held over a month later, on June 10, no entry of appearance had been filed. Moreover, at the hearing, the assistant public defender who was present informed the court that, although the Agency had been appointed to represent Perez, there were conflict issues that needed to be resolved because the Agency had been appointed to represent multiple co-defendants.

But the existence of a potential conflict that might cause the Agency to ultimately withdraw from Perez's case does not excuse the Agency's failure to assign Perez an individual attorney. The Agency was required to continue to represent Perez (and the other co-defendants) while it actively evaluated the potential conflict to determine which case, if any, it would retain, so that substitute counsel could be appointed to the co-defendant cases from which it withdrew.[7]

Given this situation, the trial court was required to do more than continue Perez's case to another pretrial conference a month later. Instead, the court should have taken immediate action to ensure that an attorney was assigned to Perez's case and that the conflict issues were resolved on an expedited basis.[8] This action could have included setting firm deadlines for filing an entry of appearance or a motion to withdraw, or setting status hearings at which a supervisor from the Public Defender Agency was required to appear if the deadlines were not met.

---

[7] *See* Alaska R. Prof. Conduct 1.16(b)-(d). Indeed, even when an attorney has to withdraw based on an actual conflict of interest, the attorney is still required to "take steps to the extent reasonably practicable to protect a client's interests" until substitute counsel is appointed. *See* Alaska R. Prof. Conduct 1.16(d).

[8] *See Glasser v. United States*, 315 U.S. 60, 71 (1942) ("The trial court should protect the right of an accused to have the assistance of counsel."); *Wheat v. United States*, 486 U.S. 153, 160-61 (1988) (requiring trial court to take appropriate measures to protect criminal defendants from an attorney's conflict of interest); *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980) (imposing a duty of inquiry on trial court when the court "knows or reasonably should know that a particular conflict exists").

Accordingly, we agree with Perez that the trial court failed to fulfill its duty to safeguard Perez's constitutional right to counsel.

However, we disagree with Perez that the remedy for the trial court's failure to act is necessarily dismissal of Perez's case under Rule 45(g). In his petition for review, Perez argues that dismissal is the appropriate remedy because he claims that the trial court's failure to act resulted in Perez being represented by "conflicted" attorneys who had no authority to waive Rule 45 time on his behalf.

We acknowledge that multiple representation of co-defendants beyond the initial pretrial hearings is disfavored. As the American Bar Association has advised:

> Except where necessary to secure counsel for preliminary matters such as initial hearings or applications for bail, a defense counsel (or multiple counsel associated in practice) should not undertake to represent more than one client in the same criminal case. When there is not yet a criminal case, such multiple representation should be engaged in only when, after careful investigation and consideration, it is clear either that no conflict is likely to develop at any stage of the matter, or that multiple representation will be advantageous to each of the clients represented and that foreseeable conflicts can be waived.[9]

Alaska Professional Conduct Rule 1.7(a) likewise provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."[10] A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's

---

[9] *ABA Standards for Criminal Justice* § 4-1.7(d) (4th ed. 2015).

[10] Alaska R. Prof. Conduct 1.7(a).

responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.[11]

A later subsection of the same rule provides, "A lawyer shall act with reasonable diligence in determining whether a conflict of interest . . . exists."[12]

But contrary to Perez's assumptions, the mere appointment of an agency to multiple co-defendants does not — standing alone — create an active conflict of interest.[13]    Instead, the problem is the inherent potential for adverse interests or antagonistic defenses among co-defendants, and the fact that active conflicts of interest are likely to develop as the clients share confidential information with their attorneys and decisions about pretrial investigations and negotiations have to be made.  Indeed, the potential for active conflicts of interests among co-defendants is so high that Alaska law prohibits the joint representation of co-defendants at trial unless there has been a court inquiry and an on-the-record express waiver of any conflict of interest.[14]

Thus, when an agency is assigned to represent multiple defendants at arraignment, it is incumbent on the agency to determine on an expedited basis which defendant it will continue to represent and which cases it will withdraw from so that substitute counsel can be appointed.  Indeed, the longer an agency waits to resolve which case it will retain, the higher the likelihood that an actual conflict of interest will develop that will require the agency to withdraw from *all* of the co-defendants' cases.

---

[11]   *Id.*

[12]   Alaska R. Prof. Conduct 1.7(c).

[13]   *Cf. Mickens v. Taylor*, 535 U.S. 162, 169-71 (2002) (distinguishing between actual conflicts of interest and the potential for such conflicts created by multiple representation).

[14]   *See Moreau v. State*, 588 P.2d 275, 283-84 (Alaska 1978) (adopting Minnesota rule that "the trial judge must personally advise the defendant of potential dangers inherent in dual representation").

Here, the Agency did not act with reasonable diligence.  Instead, it took months for the Agency to withdraw from the co-defendants' cases.  At the June 10 hearing, more than a month after Perez's arraignment, the Agency was still representing three of the co-defendants (Perez, Ratliff, and B. Millhouse).  By the next hearing, on July 8, the Agency had withdrawn from Millhouse's case but was still representing Perez and Ratliff.  By the following hearing, August 5, the Agency had withdrawn from Ratliff's case, and appeared to be representing only Perez.[15]

Thus, we agree with Perez that the conflict issues were not resolved in a timely manner, and that the trial court had a duty to intervene to ensure that they were resolved more expeditiously.  However, the primary problem was not the existence of a potential conflict caused by the multiple representations, but the fact that Perez did not have an individual attorney for over five months while potential conflicts were resolved.

We accordingly must now determine whether the absence of an assigned attorney invalidated Perez's waiver of his Rule 45 speedy trial time such that Perez's case should be dismissed with prejudice under Rule 45(g).

*Why we conclude, based on the specific record before us, that the trial court did not err in finding that the Agency attorneys representing Perez at the pretrial conferences had apparent authority to consent to a continuance on his behalf*

Under Alaska Criminal Rule 45, a defendant must be brought to trial within 120 days from the date of the service of the charging document.[16]  However, there are a number of circumstances that can result in time being excluded from the Rule 45

---

[15]  We acknowledge that nearly three months later, the Agency withdrew from Perez's case based on a conflict of interest, but it is unclear from the record whether that conflict of interest was related to the earlier multiple representation of co-defendants.

[16]  Alaska R. Crim. P. 45(b)-(c).

speedy trial calculation.[17] One of the excluded periods of time is set out in Rule 45(d)(2): "The period of delay resulting from an adjournment or continuance granted at the timely request or with the consent of the defendant and the defendant's counsel." The trial court relied on this subsection when it tolled Perez's Rule 45 time at the various pretrial conferences.

Perez argues that it was error for the trial court to rely on subsection (d)(2) to toll the time for trial under Rule 45 because the court was aware that the Public Defender Agency had a potential conflict of interest in representing Perez. But, as we just explained, we do not agree with Perez that the mere existence of a potential conflict of interest automatically precluded the Agency from representing Perez at these initial pretrial hearings.

The more significant problem in Perez's case is not the potential conflict of interest based on the multiple representation of co-defendants, but the absence of any individual attorney assigned to represent Perez. In order to toll Rule 45 time under subsection (d)(2), the trial court must find that the requested continuance was "at the request or with the consent of the defendant *and* the defendant's counsel."[18] In other words, tolling under (d)(2) is generally premised on the assumption that the defense attorney and the defendant have a functional working relationship and the defense attorney is not seeking a continuance that will toll Rule 45 time without the knowledge and consent of their client.[19]

Perez argues that he did not have an attorney-client relationship with the assistant public defenders who represented him at the pretrial hearings because none of

---

[17] *See* Alaska R. Crim. P. 45(d)(1)-(7).

[18] Alaska R. Crim. P. 45(d)(2) (emphasis added).

[19] *Machado v. State*, 797 P.2d 677, 685 (Alaska App. 1990).

them were actually assigned to his case. But it is not unusual for attorneys within an agency to appear for each other's clients at pretrial hearings, and the fact that the continuances were requested by assistant public defenders who were not Perez's assigned public defender does not mean that Perez should have been considered "unrepresented."[20]

What was unusual in Perez's case was that there was no individual attorney assigned to Perez, and it was therefore clear that the advice and representation that Perez was receiving was limited to the advice and representation he received in the hearings themselves.

As a general matter, our case law is clear that a trial court does not need to obtain a separate Rule 45 waiver from a defendant when their defense attorney requests a continuance that will toll Rule 45. Instead, when an attorney appears for a defendant at a hearing and requests a continuance, the trial court may assume that the continuance is requested with the defendant's knowledge and consent unless there is an affirmative showing to the contrary.[21] As we explained in *State v. Jeske*:

---

[20]   *Cf. Heavygun v. State*, 368 P.3d 707, 711 (Mont. 2016) (noting that "it is 'common practice' for defense attorneys to appear on each other's behalf, when asked to do so because of illness or scheduling conflicts, and especially for more routine matters, such as status hearings" and that "the allowance of stand-in counsel for hearings did not constitute deficient performance or otherwise fall below an objective standard of reasonableness sufficient to establish the deficiency prong of *Strickland*").

[21]   *See Yearty v. State*, 805 P.2d 987, 991 (Alaska App. 1991); *see also Machado v. State*, 797 P.2d 677, 685 (Alaska App. 1990) ("While we believe that this rule gives the defendant the right to object to a continuance and that the rule assumes that counsel will make the decision to move for a continuance after consultation with the defendant, we do not believe that the court should normally be required to obtain a separate waiver from the defendant."); *Baker v. State*, 110 P.3d 996, 999 (Alaska App. 2005); *Henson v. State*, 576 P.2d 1352, 1356 n.9 (Alaska 1978).

While the wording of Rule 45(d)(2) apparently requires a criminal defendant's concurrence in any delay or continuance requested by the defense attorney, this court and the Alaska Supreme Court have repeatedly stated that the trial court can rely on a defense attorney's request for a continuance and need not seek a separate, personal consent from the defendant unless the defendant affirmatively objects to the defense attorney's action.[22]

Our case law is also clear that when a defendant brings an objection to the trial court's attention, the time already tolled under subsection (d)(2) remains tolled but no further tolling under (d)(2) can occur once the trial court affirmatively finds that the defendant objects to the continuance.[23]

The question presented by Perez's case is whether a trial court may similarly assume that any requested continuance that tolls Rule 45 time is with the knowledge and consent of the defendant when the defendant has not actually had an individual attorney assigned to his case. Perez argues that a defendant in such a situation is akin to an unrepresented defendant and the trial court should therefore follow the procedures for unrepresented defendants, which require the trial court to advise the defendant personally of the defendant's Rule 45 speedy trial rights and the effect that consenting to a continuance will have on those rights.[24]

---

[22] *State v. Jeske*, 823 P.2d 6, 8 (Alaska App. 1991) (citing *Henson*, 576 P.2d at 1356 n.9; *Yearty*, 805 P.2d at 991; *Machado*, 797 P.2d at 684-85; *Snyder v. State*, 524 P.2d 661, 664 (Alaska 1974); *O'Dell v. Anchorage*, 573 P.2d 1381, 1384 (Alaska 1978)).

[23] *See Jeske*, 823 P.2d at 10 ("When a defendant asserts that he or she never consented to a continuance obtained or stipulated to by defense counsel, Rule 45 remains tolled until the judge makes an affirmative finding that the defendant did not consent to the previously ordered continuance."); *see also Rhames v. State*, 907 P.2d 21, 25 (Alaska App. 1995).

[24] *See* Alaska R. Crim. P. 45(d)(2) ("A defendant without counsel shall not be deemed
(continued...)

We agree with Perez that the best practice would be to treat a defendant without an assigned attorney as akin to an unrepresented party for purposes of tolling Rule 45 under subsection (d)(2). But we conclude that the trial court did not err in failing to follow those procedures in Perez's case because the record supports the trial court's assumption that the continuances were requested with the knowledge and consent of Perez. This is most clearly shown by the exchange between the court and Perez that occurred at the August 5 hearing.

At that hearing, the court requested that an assistant public defender consult with Perez (as had occurred at other hearings). After speaking with Perez, the attorney expressed concern that she might not be authorized to represent Perez. As a result, the trial court scheduled a representation hearing for the following week to finally resolve the representation issues in Perez's case.

But Perez then made it clear that he did not want to come back for the representation hearing and that he was willing to have his case continued, with the rest of his co-defendants, until October 7. After the attorney informed the trial court that Perez was "comfortable" with waiving his Rule 45 speedy trial time until October 7, the court addressed Perez personally and confirmed that Perez was willing to have the Rule 45 time tolled. Perez also demonstrated an understanding of his Rule 45 rights, specifically requested an accounting of "where [he] was at." The trial court explained that 39 days of his 120-day Rule 45 time had run. Perez did not object to that calculation or make any further inquiry.

The exchange at the August 5 hearing demonstrates that Perez had an adequate understanding of his Rule 45 rights and that he was more than willing to

---

[24] (...continued) to have consented to a continuance unless the defendant has been advised by the court of the right to a speedy trial under this rule and of the effect of consent.").

consent to continuances that would toll his Rule 45 time. Indeed, when given the opportunity to return for a representation hearing the following week, Perez apparently preferred to wait until the next pretrial conference, with his Rule 45 time tolling. We note that, even after the Office of Public Advocacy contract attorney entered an appearance, Perez continued to consent to continuances that tolled his Rule 45 time.

We also find it significant that Perez's willingness to waive his Rule 45 time was objectively reasonable given the specific circumstances of his case. Perez was facing twenty-seven felony counts in an eighty-five count indictment involving eight co-defendants.[25] Discovery in the case was voluminous, and Perez's co-defendants had similarly requested continuances and waived speedy trial time while their attorneys struggled to address discovery issues and ensure that discovery was complete. There is also nothing in the record to suggest that moving for a severance at this early stage of the pretrial proceedings would have been advantageous to Perez.[26]

Thus, given the record and all of the surrounding circumstances, we conclude that, while the trial court erred in failing to take more timely action on the representation issues in Perez's case, this error did not invalidate the Rule 45(d)(2) findings that the trial court made. Accordingly, we affirm the trial court's denial of Perez's motion to dismiss his case with prejudice under Rule 45(g).

*Conclusion*

The trial court's order denying Perez's motion to dismiss is AFFIRMED.

---

[25] We note that some of the co-defendants still had warrants out for their arrests and therefore had not yet been arraigned on the charges.

[26] *See also* Alaska R. Crim. P. 45(d)(5) (permitting the trial court to toll Rule 45 time for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and there is good cause for not granting a severance").

Judge HARBISON, concurring.

I agree with the Court that the delay that occurred in this case was unacceptable. But I write separately to express my concern that delays such as this one seem to be more common under the informal, ad hoc process for resolving representation issues that has, in recent years, replaced the rules-based approach formerly employed by trial courts.[1]

Alaska's trial courts currently address representation issues, and particularly substitution of counsel issues, very informally. When a court-appointed attorney claims to have a conflict of interest, the trial court rarely requires the attorney to file a motion to withdraw. Instead, trial courts typically allow the agencies themselves to determine when and whether conflict counsel will be appointed to represent the defendant. Thus, when a defense attorney informs the court that they may need to withdraw, courts often take no action, except, as here, to continue the case while leaving it to the public defense agencies to resolve the conflict among themselves. It is rare for a court to exercise its authority over the substance or timing of the withdrawal process.

In my view, this informality does not have the desired effect of promoting the fair and efficient adjudication of criminal matters. Instead, defendants — and trial

---

[1] *See, e.g.*, *Ortberg v. State*, 751 P.2d 1368, 1376 n.6 (Alaska App. 1988) (explaining that, under Alaska Rule of Criminal Procedure 50(b), the civil rules regarding attorneys apply in criminal cases); Alaska R. Civ. P. 81(e) (setting out procedure that must be followed in order for an attorney to withdraw from representation of a client); *see also* Alaska R. Prof. Conduct 1.7 (providing that, except for enumerated exceptions, an attorney may not represent a client if the representation involves a concurrent conflict of interest and requiring attorneys to act with reasonable diligence in determining whether such a conflict of interest exists); Alaska R. Prof. Conduct 1.9 (explaining when a lawyer's duty to former clients bars the lawyer from representation of a current client); Alaska R. Prof. Conduct 1.10 (imputing certain conflicts of interest to lawyers associated in a firm).

courts — are often left in the dark as to which agency, and which attorney, has assumed responsibility for the defendant's representation. It is not uncommon for the process to be unnecessarily protracted, and while the representation issues are being resolved, defense attorneys often claim to be unable to advocate for a defendant, even when there is an existing, unchallenged court order appointing a particular agency.

On top of this, the informality of most representation proceedings makes it more likely that the parties and the court will conflate the issues relating to representation, failing to identify whether they are litigating a defendant's motion to substitute counsel, a defendant's motion to waive their right to counsel in order to proceed pro se, or a defense attorney's motion to withdraw. Once these issues are conflated, it is all too easy for the trial court to conduct an insufficient inquiry or to apply an incorrect analysis. In my view, if representation issues were addressed more formally, through written motion practice and established court procedures, they would be resolved more quickly and reliably.