*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| OFFICE OF PUBLIC ADVOCACY, | ) | |
| | ) | Supreme Court No. S-18741 |
| Applicant, | ) | Court of Appeals No. A-14132 |
| | ) | |
| v. | ) | Superior Court Nos. 1KE-20-00202 |
| | ) | CR, 1KE-19-01040 CR, 1PW-20- |
| SUPERIOR COURT, FIRST | ) | 00093 CR, 1PW-20-00134 CR, |
| JUDICIAL DISTRICT, | ) | 1PW-20-00109 CR, 1PW-20-00118 |
| | ) | CR, 1PW-20-00074 CR |
| Respondent. | ) | |
| | ) | O P I N I O N |
| | ) | |
| | ) | No. 7749 – February 14, 2025 |

Certified Original Application for Relief and Jurisdiction Transfer from the Court of Appeals of the State of Alaska, on original application for relief from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Daniel Doty, Judge.

Appearances: Elizabeth D. Friedman, Law Office of Elizabeth D. Friedman, Prineville, Oregon, for Applicant Office of Public Advocacy. Thomas P. Amodio, Reeves Amodio LLC, Anchorage, for Respondent Superior Court, First Judicial District. Renee McFarland, Deputy Public Defender, and Terrence Haas, Public Defender, Anchorage, for Amicus Curiae Public Defender Agency. Tamara E. DeLucia, Solicitor General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before:  Maassen, Chief Justice, Carney, Borghesan, and Henderson, Justices, and Winfree, Senior Justice.[*]  [Pate, Justice, not participating.]

CARNEY, Justice.

# I.    INTRODUCTION

After the unanticipated resignation of an assistant public defender, the Public Defender Agency proposed a plan to temporarily assign other attorneys to her cases until a permanent replacement was hired.  The superior court rejected the Agency's plan because no specific attorney would be assigned to the cases or prepare them for trial.  It ordered the Agency to advise affected clients that if they wished to remain represented by the Agency, they would have to waive their rights to effective assistance of counsel until an attorney was permanently assigned to their cases, and if they did not waive their rights, the Agency would withdraw.

The Agency was able to assign specific attorneys for all but one client's case.  It withdrew from that case as ordered by the superior court.  The court then appointed the Office of Public Advocacy (OPA) to represent that client.  OPA moved to withdraw.  It argued that its appointment to the case was not authorized under AS 44.21.410 because the Agency's lack of capacity to take on additional cases was not a conflict of interest under that statute and that the superior court had exceeded its authority by rejecting the Agency's proposed plan to cover the affected cases.  The superior court denied the motion to withdraw.

OPA eventually filed an original application for relief with the court of appeals challenging its appointment.  The court of appeals certified the original

---

[*]    Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

application to this court and asked us to accept transfer of jurisdiction, which we granted.

We issued an order continuing OPA's appointment, stating that a written opinion explaining the order would follow. We now explain that the superior court did not err by intervening in the affected cases; lack of capacity can amount to a conflict of interest; and when the Agency has a conflict due to its lack of capacity to take cases, AS 44.21.410(a)(4) requires that OPA be assigned.

## II.   FACTS AND PROCEEDINGS

### A.   Background

#### 1.   Public Defender Agency

In 2021 the Agency assigned attorneys from its Juneau office to cases in other Southeast locations, including Ketchikan, Sitka, and Prince of Wales. In late 2022 it became apparent that one of the attorneys was struggling to manage her caseload.

In early November, less than an hour before the scheduled start of a felony sentencing hearing in Ketchikan, the attorney filed a request to continue the hearing. The attorney appeared at the hearing by telephone without her client. The court denied the continuance and ordered the attorney to appear in person the next day for the sentencing hearing. The hearing was held the following day.

A few days later the attorney was again scheduled to be in Ketchikan for a felony trial. Trial proceedings were set to begin at 8:30 a.m. Shortly before that time, the attorney emailed the court that her flight from Juneau was delayed; she subsequently emailed that it had been cancelled. The court rescheduled trial to begin the next day. It also indicated it would set a sanctions hearing to address the attorney's failure to appear and her failure to advise her client about her absence. The court noted that even if the scheduled flight had arrived on time, the attorney still would not have been able to be in court at 8:30.

In addition, the attorney had a hearing scheduled before a different Ketchikan judge at the same time that the trial was supposed to start. And the attorney had not advised either judge of the scheduling conflict.

The attorney appeared as ordered in Ketchikan the following day. After being admonished by the court, the attorney moved to continue the trial, arguing that the court had damaged her relationship with her client and was unfairly penalizing her for travel difficulties. The court denied the request for a continuance; trial commenced and the defendant was convicted.

The same attorney represented another client, Georgina Mathes, in an unclassified felony case; Mathes's codefendant was represented by an OPA contract attorney.[1] Mathes had been charged in 2020. In October and again in early November 2022 the attorney advised the court that she was ready for trial. But due to the codefendant's attorney's schedule, trial was continued until December.

At a trial call on November 29, Mathes's attorney informed the court that she had been assigned to a murder case that was scheduled for a six-week trial beginning in March in Anchorage. She advised the court that she was therefore unable to do another trial until after the Anchorage trial concluded and asked that Mathes's case be continued until May or later.

The codefendant's attorney opposed any continuance but was willing to sever his case from Mathes's. The prosecution opposed both a continuance and severance, arguing that either option would be prejudicial to the State and to the victim. The court denied both the continuance and severance, finding that they were prejudicial to the State. It also concluded that the time between the end of Mathes's trial and the beginning of the Anchorage trial would provide Mathes's attorney sufficient time to prepare. The court scheduled trial for December 6.

---

[1] OPA is authorized to contract with attorneys to provide representation when its staff attorneys have conflicts of interest. *See* AS 44.21.430.

Mathes's attorney then filed a new motion to continue, arguing that she would not be able to represent Mathes and her other clients effectively if she were required to try Mathes's case before the six-week Anchorage trial. In an affidavit she stated that her investigation for Mathes's trial was incomplete and that she had 95 cases, most of which were felonies, including 26 class A felonies, sex felonies, and unclassified felonies. The Deputy Public Defender also filed an affidavit confirming that the attorney's caseload was greater than appropriate, given the severity and number of cases, and that the Anchorage trial was her top priority. The court denied the continuance.

At the beginning of the scheduled trial on December 6, the Deputy Public Defender sought a continuance because Mathes's attorney was unavailable due to a medical emergency. After the court granted the request, the Agency filed a motion to continue several of the attorney's cases before that court, including Mathes's. It asserted that the caseloads its attorneys, including Mathes's attorney, carried were far in excess of recommended maximums and that because of the stress caused by such caseloads, Mathes's attorney was unable to try any cases before the Anchorage homicide trial. The court scheduled an evidentiary hearing on the Agency's motion for early January.

On December 26, the Agency notified the court that Mathes's attorney had decided to resign. It requested that the court therefore vacate the evidentiary hearing. The court denied the motion but consolidated the evidentiary hearing with the sanctions hearing it had scheduled in the earlier case.

### 2. Evidentiary hearing

The court held a hearing in early January focused on the Agency's plan to provide representation to clients affected by the attorney's resignation. The Deputy Public Defender stated that the Agency planned to contract homicide cases to outside counsel, reassign other serious felonies to assistant public defenders, and "float" the remaining cases — meaning that those cases would be assigned temporarily to attorneys

to cover hearings until a replacement could be hired and assigned to the cases on a more permanent basis. The court recognized that a new Agency attorney was scheduled to start in Sitka in mid-March and that clients would not remain with their temporary attorneys for very long before being reassigned to the new attorney.

The court also questioned the accuracy of Mathes's attorney's assertions that she had an overwhelming caseload. It noted that the Deputy Public Defender had submitted a list of her cases to the court that reflected she had fewer cases than she had earlier reported to the court; and of those cases, fewer still were as serious or active as she had claimed. The court noted that the Deputy Public Defender had provided no specifics when initially asked to explain the discrepancy between the attorney's affidavit, which represented that she had 95 cases — a majority of which were reported to be felonies — and the number presented to the court, which was 73 cases — including 40 felonies — and had speculated the affidavit included probate cases, might have counted the cases differently, or included cases that had been reassigned. When questioned, the Deputy Public Defender appeared to suggest that he relied on the attorney's sworn — but inaccurate — representations. The court found it "inexcusable" that Mathes's attorney misled the court "on a point so material to the issues in these cases."

In Mathes's case, the Deputy Public Defender requested a two-month continuance to determine who would represent Mathes; the codefendant agreed to a short continuance but opposed a lengthy one. The prosecution said it was "resigned to the need for a short continuance." The court continued the cases to February. The court also advised the parties that it still intended to address its duty to ensure all of the attorney's other clients received effective assistance of counsel.

### 3. The court's order

A few days later the court issued an "Order on Cost Bill & Sufficiency of Representation."[2] The court recognized that criminal defendants are entitled to effective assistance of counsel "at all critical stages of a criminal prosecution," citing *Perez v. State*.[3] It observed that the Agency was required to provide competent representation to its clients. The court interpreted "competent" representation under the Rules of Professional Conduct and the state and federal constitutions to include a duty to "move a case reasonably quickly." The court concluded that the Agency was required to provide its clients "representation that is both prepared *and* prompt" (emphasis in original). It held that defendants are entitled to more than just "an attorney show[ing] up for hearings."

The court then found that the Agency was failing to meet those duties. It found that Mathes's attorney "ha[d] not been meaningfully available to most or all of her clients since she moved to continue [Mathes's case] in late November." It also concluded that the Agency's proposed plan to provide representation until a new attorney arrived did not satisfy the professional conduct rules or *Perez*. It noted that a replacement attorney would not start until March and the Agency had limited capacity to reassign cases in the interim. It concluded that by March, the affected clients would have been inadequately represented for about four months.

---

[2] It first decided not to sanction the Agency, although it concluded that the Agency bore some responsibility for the situation that led to the attorney's resignation. The court found that an Agency supervisor should have at least been aware of the problems with the flight the attorney booked and directed her to ensure the situation did not repeat itself. The court noted that this "conflict reveal[ed] the Agency's failures" because it had not noticed warning signs from the attorney's performance, intervened by ordering the attorney to take leave, or otherwise addressed the impending problem.

[3] 521 P.3d 592, 598-99 (Alaska App. 2022) (holding trial court had "affirmative duty to act" to remedy Agency's failure to assign counsel for defendant for five months).

Based on the Agency's lack of "capacity to provide trial-level representation" to many of the affected clients for so many months, the court found that the Agency had a conflict of interest under Rule of Professional Conduct 1.7(a)(2) because of the "significant risk that representation of one or more clients will be limited by the lawyer's responsibilities to another client."[4] It found that the Agency as a whole had a conflict of interest because the current Agency attorneys who would be assigned the affected cases would be forced to choose between providing representation to their current clients and the reassigned clients.

The court recognized that the conflict "presents an odd wrinkle" because it would last only until the new attorney was able to provide meaningful representation. It also acknowledged the Deputy Public Defender's concerns that if the Agency withdrew from the affected cases, those clients would simply sit unrepresented on a waiting list until the Agency itself could resume taking cases. But the court concluded that would not be the case because OPA exists in part to step in where the Agency is unable to represent a client.

The court explained that OPA's authorizing statute, AS 44.21.410(a)(4), requires it to represent "indigent persons who are entitled to representation [under the Agency's authorizing statute] and who cannot be represented by the [Agency] because of a conflict of interests." It highlighted that the statute "does not inquire about the nature of a conflict, or whether the conflict is temporary." The court therefore concluded that as long as a conflict of interest existed at the time of withdrawal, OPA was authorized to provide representation.

---

[4] It noted that the court of appeals previously had commented favorably on the view that an unsustainable workload could create a conflict under Rule 1.7(a)(2), citing an unpublished order in *Donnelly v. State*, Nos. A-13597/13598 (Alaska Court of Appeals Order, Nov. 3, 2021) (unpublished order on motion to permit withdrawal of counsel).

Recognizing that withdrawal and reassignment to another agency was a drastic step, and that OPA might also "be overburdened, or might have its own case-specific conflicts," the court ordered the Agency to meet with the clients affected by the attorney's resignation; advise them of the Agency's plans for their continued representation; and, if the Agency would not be assigning permanent attorneys, advise them that, if they wished, it would withdraw from representation so that the affected cases could be transferred to OPA.[5] The court further directed that, if the client preferred to remain with the Agency, the client would have to waive any claim of ineffective assistance of counsel until a permanent attorney was assigned.

The court also ordered that, after meeting with each of the affected clients, the Agency was, in each case, to have an attorney file an entry of appearance, a motion to withdraw, or a notice that the client requested to remain with the Agency. And in those cases in which clients requested to remain with the Agency, the court ordered that a representation hearing be held to ensure the clients had been fully advised and had knowingly, intelligently, and voluntarily "waive[d] their right to the effective assistance of counsel until a permanent attorney can be assigned to the case."

### 4. Further proceedings

The prosecution moved for partial reconsideration of the court's order. While it agreed that judicial intervention was warranted because the Agency had an irreparable conflict "imped[ing] its ability to effectively represent the named defendants," the prosecution argued that requiring waiver of the right to effective assistance of counsel was "constitutionally unworkable" and violated the ethical rules

---

[5] The superior court used the term "permanent" as a "shorthand" to mean an attorney who, when entering an appearance, intended to represent the client until trial.

governing prosecutors and defense attorneys. The prosecution requested that the court appoint counsel through OPA or Alaska Administrative Rule 12(e) instead.[6]

The Agency also responded to the court's order. After stating its general intent to comply with the court's order and outlining the specific steps it intended to take, it disputed the court's conclusion that its previously proposed plan constituted ineffective assistance of counsel. The Agency argued that its proposed plan to provide representation was constitutionally sufficient because each client would be assigned to a current Agency attorney and given the lawyer's name and contact information, and that lawyer would "address issues that concern the client until the case is reassigned to the new lawyer," including bail, negotiations, discovery, and hearing preparation and appearances. The Agency asserted that its coverage plan therefore did not "present[] the same concerns highlighted by the Alaska Court of Appeals in *Perez*."[7]

The superior court denied the prosecution's motion for reconsideration. The court stated that the Agency "ha[d] sorted things out" by providing permanent attorneys for most of the affected clients and by withdrawing from two others, in which the court had appointed OPA. The court acknowledged the prosecution's concern that its order was not constitutionally permissible but concluded that the concern was "academic" because the public defender covering the remaining cases advised the court that he "plan[ned] to work the cases, investigate what needs investigating, file motions if they need to be filed, hire experts if they need to be hired, [and] negotiate if it is

---

[6]    Alaska Admin. R. 12(e) authorizes a court to appoint "counsel, or a guardian ad litem, or other representative" for an indigent person if the court determines that the appointment is "required by law or rule" but is not authorized under AS 18.85.100(a) or AS 44.21.410, which provide for appointment of attorneys for indigent persons by the Agency or OPA.

[7]    At issue in *Perez* was the right to assistance of counsel for an Agency client who was not assigned an attorney for over five months. *Perez*, 521 P.3d at 598.

fruitful to negotiate." The court observed that, "[i]n the end, [that] is all anyone can really ask for."

## B.     Office Of Public Advocacy Appointment

On January 23, 2023, the Agency moved to withdraw from Mathes's case, consistent with her request and the court's order. The court granted the motion and appointed OPA to represent Mathes on January 24.

On February 8, OPA filed a motion to vacate its appointment. First, it argued that the Agency did not have a conflict of interest as a matter of fact or as a matter of law. OPA argued that the court's prior order denying the prosecution's motion for reconsideration showed that the Agency did not have a conflict of interest because the court had concluded that the Agency's coverage plan satisfied its effective representation concerns. OPA also cited the "additional information" supplied by the Agency during those hearings as establishing that the Agency had capacity to represent Mathes. OPA also argued that the court had incorrectly interpreted "[f]ailure to meet the [c]ourt's desired trial schedule" as a conflict, and that even if it were a conflict, it would not create an Agency-wide conflict of interest. But if it did create an Agency-wide conflict, OPA argued, then OPA had the same conflict — if not worse, because it had fewer staff attorneys than the Agency.

OPA disagreed with the court's reliance on *Perez v. State*[8] and *Donnelly v. State*.[9] *Perez*, OPA argued, recognized that the Agency is responsible for analyzing conflicts of interest but did not suggest that a delay in assigning a permanent attorney violates the right to effective counsel. And *Donnelly*, it asserted, was inapposite because the court in that case denied the Agency's motion to withdraw and did not

---

[8]     521 P.3d 592 (Alaska App. 2022).

[9]     Nos. A-13597/13598 at *3 (Alaska App. Order, Nov. 3, 2021) (unpublished order on motion for withdrawal of counsel).

appoint OPA. Instead, OPA argued, the court should have looked to *Nelson v. State*[10] for its ineffective assistance of counsel analysis. OPA characterized *Nelson* as holding that a criminal defendant cannot raise an ineffective assistance of counsel claim before a verdict. OPA also noted that we did not extend the conflict in *Nelson* to the entire Agency. We limited the imputed conflict to the regional Agency office where the conflicted attorney worked.[11]

OPA next claimed that it was statutorily prohibited from representing Mathes because it was only authorized to take cases when the Agency had an "actual" or "legal" conflict of interest. It argued that a capacity-based conflict was not an actual conflict as contemplated by its authorizing statute. OPA also suggested that the superior court had exceeded its authority by asserting a conflict when the Agency, an executive branch entity, avowed that there was none. In OPA's view, the court's plan effectively "ordered the [Agency] to present indigent clients with a choice of counsel." And under *Daniels v. State*,[12] OPA argued, a trial court cannot interfere with the administrative assignment of cases by presenting indigent clients a choice of counsel. Furthermore, OPA asserted, the superior court's conclusions would encourage Agency attorneys unable to meet deadlines to claim conflicts of interest or encourage clients to demand a new attorney when they are unsatisfied with the pace of their pending cases.

OPA also objected to its appointment to represent Mathes in six misdemeanor cases in addition to her felony case. OPA argued that there was no conflict in the misdemeanor cases, that its appointment was a clerical error because of ambiguity of the court's order, and that nothing in the record or the order indicated that the Agency lacked capacity to handle the misdemeanors. Finally, OPA asked the court to reappoint the Agency or appoint counsel under Administrative Rule 12(e).

---

[10] 440 P.3d 240, 243-44, 247-48 (Alaska 2019).

[11] *Id.* at 246 & n.23.

[12] 17 P.3d 75 (Alaska App. 2001).

The court denied OPA's motion on February 21. It first rejected OPA's argument that the factual basis of its order had changed, observing that OPA had not presented any evidence to support its argument. It reaffirmed that, based upon the record, the Agency had a conflict of interest that had not changed since the court's January 9 order.

The court next noted that OPA previously had refused its offer of an evidentiary hearing and that its representations on behalf of the Agency were ambiguous. The court found that it had the authority and duty to intervene to correct a conflict and ensure Mathes was adequately represented, that *Daniels* supported its position, and that *Nelson* did not limit a court to remedying an ineffective assistance of counsel claim only after a conviction.

The court reiterated its conclusion that the Agency had a conflict of interest under the professional rules and the federal and state constitutions. It held that this conflict arose from the deficit of Agency attorneys to handle its caseload, which led to almost three years of delays in Mathes's case and an expected further delay of at least five months. It held therefore that the Agency was permitted to withdraw and cited court decisions from across the country and formal opinions from both the American Bar Association and other state bar associations to bolster its conclusion.[13]

---

[13] The court cited *State v. Smith*, 681 P.2d 1374 (Ariz. 1984); *In re Edward S.*, 92 Cal. Rptr. 3d 725, 746-47 (Cal. App. 2009); *People v. Roberts*, 321 P.3d 581, 589 (Colo. App. 2013); *In re Ord. on Prosecution of Crim. Appeals by Tenth Jud. Cir. Pub. Def.*, 561 So. 2d 1130 (Fla. 1990); *United States v. Hanhardt*, 155 F. Supp. 2d 861, 871 (N.D. Ill. 2001); *State v. Peart*, 621 So. 2d 780 (La. 1993); *Carrasquillo v. Hampden Cnty. Dist. Cts.*, 142 N.E.3d 28, 49 (Mass. 2020); *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 607-08 (Mo. 2012) (en banc); *United States v. De Castro-Font*, 583 F. Supp. 2d 243, 247-48 (D.P.R. 2008); *Lozano v. Cir. Ct. of Sixth Jud. Dist.*, 460 P.3d 721 (Wyo. 2020). For formal opinions the superior court cited to, *see* ABA Comm. on Ethics & Pro. Resp., Formal Op. 06-441 (2006); Colo. Bar Ass'n, Formal Op. 146 (2022); Or. State Bar, Formal Op. No. 2007-178 (2007); S.C. Bar Ethics

The court concluded that AS 44.21.410(a)(4) required it to appoint OPA. It explained that because the statute did not exclude "temporary conflicts" and did not "limit the definition of the term 'interest' to exclude a person's interest in speedy, prompt, and diligent representation," OPA had to be appointed. The court rejected OPA's request to appoint Rule 12(e) counsel because Rule 12(e) counsel may be appointed only if neither the Agency nor OPA were authorized to accept the appointment. Finally, noting the issue was not moot because Mathes continued to suffer from the "lack of a *timely* attorney," the court rejected OPA's argument that the Agency had resolved the conflict by planning to assign its newly hired attorney to Mathes's cases six weeks later (emphasis in original).[14]

Two days later, OPA moved to withdraw once again. It made a variety of arguments. It first argued that the Public Advocate was counsel of record in Mathes's case, which created statewide conflicts for OPA and compromised his neutrality as OPA's director. It argued that the Public Advocate's appointment was therefore directly adverse to Mathes. And it argued that because the Public Advocate was responsible for resource allocation for OPA, including contracting with outside attorneys, his appointment created a conflict with any case assigned to a contract attorney, including Mathes's codefendant's. Finally, OPA asserted that appointing it would further delay Mathes's case.

The court denied the motion. It first held that it had not created OPA's "perceived conflict" because it had "not assign[ed] the OPA director to represent . . .

---

Advisory Comm, Ethics Advisory Op. 04-12 (2004); State Bar of Wis., Formal Op. E-84-11 (1998).

[14] The court acknowledged that it had not considered Mathes's misdemeanor cases in its original order but nonetheless continued OPA's appointment, noting that OPA had not requested a hearing to contest the Agency's basis for withdrawal and had not presented any evidence that the Agency did not have a conflict.

Mathes." And it noted that if, as OPA claimed, there were any such perceived problems, they could be addressed by simply assigning the case to a staff attorney.

The court again concluded that OPA had not established that it or its contractors had conflicts and that it misconceived the nature of the Agency's conflict. The court reiterated that the conflict was due to an additional delay of at least five months "with an indefinite maximum" length before a specific Agency attorney could represent Mathes. It determined that because that conflict was "driven by the Agency's lack of capacity," the conflict required the court's intervention to ensure Mathes received effective assistance. The court clarified that it was not requiring "an attorney who could immediately try an unclassified felony," but only "someone who is available, *now*, to counsel . . . Mathes, even on pretrial matters," and held that OPA's authorizing statute and the professional rules required OPA to provide that attorney (emphasis in original).

The court repeated its observation that OPA had not presented any evidence that it had a conflict or requested an evidentiary hearing to support its claim that it had the same conflict as the Agency. And the court dismissed OPA's argument that a lack of capacity in its local offices amounted to an agencywide conflict, pointing out that OPA is a statewide agency and AS 44.21.410(a)(4) required it to provide representation when the Agency had a conflict. The court concluded that "OPA has offered nothing to explain how the whole agency, which continues to enter appearances and resolve cases in courts around the state even as this order is being written, lacks the capacity to accept a single client's cases."

Two days later, OPA filed a motion for reconsideration, a motion for evidentiary hearing, and a motion to stay its appointment pending appellate review and appoint Rule 12(e) counsel to represent Mathes in the interim. The court denied the motions for reconsideration and an evidentiary hearing the next day. On March 3, OPA filed a motion in the court of appeals to stay its appointment and appoint Rule 12(e) counsel, noting it intended to file a petition for review.

On March 6, the superior court denied the stay and ordered OPA to file an entry of appearance in Mathes's case. The court noted that a stay "would cause undue — and unconstitutional — delays in the appointment of counsel" for Mathes.

### C.    Original Application For Relief

On March 7, the court of appeals converted OPA's motion for stay of its appointment in the superior court to an original application for relief under Appellate Rule 404.[15]    It certified OPA's original application to us in May under AS 22.05.015(b).[16]

The court stated three reasons for its certification. First, "the issues presented here relate to questions of court administration and the allocation of statewide budgets — and the answers to these questions will have repercussions far beyond this individual case" which are "matters that fall directly within the Alaska Supreme Court's expertise." Second, "the issues presented here raise substantial questions regarding the ethical obligations of appointed attorneys under the professional rules of responsibility, the oversight of which is vested in the supreme court." And finally, "the issues presented here relate to an on-going crisis involving state agencies and constitutional representation for indigent defendants that is of sufficient importance to warrant the supreme court granting a petition for hearing in this case."

We accepted certification and invited the Agency and prosecution to participate.[17]    On March 7, 2024, following oral argument, we ordered that OPA

---

[15]    Alaska R. App. P. 404 (authorizing original application for relief in appellate court when "relief is not available from any other court and cannot be obtained through process of appeal, petition for review, or petition for hearing").

[16]    AS 22.05.015(b) (authorizing certification of questions "involv[ing] a significant question of law under the Constitution of the United States or under the constitution of the state or involv[ing] an issue of substantial public interest that should be determined by the supreme court").

[17]    *Off. of Pub. Advocacy v. Super. Ct. First Jud. Dist.*, No. S-18741 (Alaska Supreme Court Order, June 19, 2023).

continue to represent Mathes in her cases through resolution in the trial courts. We promised a written opinion explaining our order; this is our explanation.

## III. STANDARD OF REVIEW

"Questions of statutory interpretation and constitutional issues are questions of law to which we apply our independent judgment."[18] "Whether a conflict of interest exists under the Alaska Rules of Professional Conduct is an issue of law also reviewed de novo under the independent judgment standard."[19] "In exercising our independent judgment, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[20]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Intervening.

"The Alaska Constitution 'vest[s] "legislative power in the legislature; executive power in the governor; and judicial power" in the courts.' "[21] "Derived from this 'distribution of power among the three branches of government' is the separation of powers doctrine, which 'limits the authority of each branch to interfere in the powers that have been delegated to the other branches.' "[22] "[T]he separation of powers and its complementary doctrine of checks and balances are part of the constitutional framework of this state."[23] It not only "protect[s] each branch's functional existence," it also

---

[18] *Alaska Pub. Def. Agency v. Super. Ct.*, 450 P.3d 246, 251 (Alaska 2019).

[19] *Nelson v. State*, 440 P.3d 240, 243-44 (Alaska 2019); *see also Burrell v. Disciplinary Bd. of Alaska Bar Ass'n*, 702 P.2d 240, 242-43 (Alaska 1985).

[20] *Healy Lake Vill. v. Mt. McKinley Bank*, 322 P.3d 866, 871 (Alaska 2014) (quoting *John v. Baker*, 982 P.2d 738, 744 (Alaska 1999)).

[21] *State v. Recall Dunleavy*, 491 P.3d 343, 367 (Alaska 2021) (alteration in original) (quoting *Jones v. State, Dep't of Revenue*, 441 P.3d 966, 981 (Alaska 2019)).

[22] *Id.* (quoting *Alaska Pub. Int. Rsch. Grp. v. State*, 167 P.3d 27, 35 (Alaska 2007)).

[23] *Id.* (quoting *Alaska Pub. Int. Rsch. Grp.*, 167 P.3d at 34-35).

"preclude[s] the exercise of arbitrary power and . . . safeguard[s] the independence of each branch of government."[24]

The Agency, OPA, and the Department of Law are all executive branch agencies, while the superior court is part of the judicial branch. "Under the separation of powers doctrine, '[w]hen an act is committed to executive discretion, the exercise of that discretion within constitutional bounds is not subject to the control or review of the courts.' "[25] OPA argues that the court violated the separation of powers doctrine by intervening in the Agency's representation of Mathes. Specifically, it contends the court improperly interfered with the internal workings of an executive agency. It also argues that the court exceeded its authority by allowing Mathes the "choice" between Agency and OPA counsel and preventing the return of her cases to the Agency once the Agency enacted a plan to provide representation to Mathes and other affected clients until its new attorney arrived.

As arms of the executive branch, the Agency, OPA, and the Department of Law are entitled to full independence, "subject to judicial authority and review only in the same manner and to the same extent as retained counsel."[26] We agree with other

---

[24]     *Id.* (quoting *Alaska Pub. Int. Rsch. Grp.*, 167 P.3d at 35).

[25]     *Jackson v. State*, 127 P.3d 835, 836 (Alaska App. 2006) (alteration in original) (quoting *Pub. Def. Agency v. Super. Ct.,* 534 P.2d 947, 950 (Alaska 1975)).

[26]     AM. BAR ASS'N STANDING COMM. ON LEGAL AID & INDIGENT DEFENDANTS, TEN PRINCIPLES OF A PUBLIC DEFENSE DELIVERY SYSTEM, 3 (2023), https://www.americanbar.org/content/dam/aba/administrative/legal_aid_indigent_defendants/ls-sclaid-ten-princ-pd-web.pdf; *see also, e.g.*, *Kerr v. Parsons*, 378 P.3d 1, 12 (N.M. 2016) (Vigil, J., concurring specially) ("In the absence of a constitutional violation, it is imperative in the administration of justice that we respect the independence of the Department and the Commission and refrain from interfering with their internal management decisions."); *In re Certification of Conflict in Motions to Withdraw Filed by Pub. Def. of Tenth Jud. Cir.*, 636 So. 2d 18, 23 (Fla. 1994) (Harding, J., concurring) ("Except in the most unusual circumstances, I would leave th[e] decision

courts that have recognized that a court may not interfere with the management of public defender services unless "presented with a case that demonstrates that the [public defender agency's] operations violate the constitution, either because of unlawful managerial decisions or a lack of resources necessary for providing the effective representation required under our Constitution and statutes."[27]

But we also agree with the court of appeals that "[t]rial courts play an important role in safeguarding [the] constitutional right" of effective assistance."[28] Courts have an obligation to ensure the integrity of the justice system[29] and to ensure that defendants receive constitutionally effective assistance of counsel.[30] Compliance

---

[of who should exercise authority and make decisions about whether the public defender has the resources to perform all the responsibilities required by law] with the public defender and as a court would not second-guess it.").

[27] *Kerr*, 378 P.3d at 13 (Vigil, J., concurring specially); *accord id.* at 10 (majority opinion) ("Where there is no violation of right, a court lacks the power to compel an officer of a coordinate branch of government to perform a duty."); *see also Lavallee v. Justs. in Hampden Super. Ct.*, 812 N.E.2d 815, 910-11 (Mass. 2004) (requiring prosecution to be dismissed if no attorney appeared for indigent defendant within 45 days of arraignment); *In re Certification of Conflict*, 636 So. 2d at 22 (holding court did not interfere with management of public defender's office by reviewing its motion to withdraw because its inquiry was limited to existence of factual basis for motion); *id.* at 23 (Harding, J., concurring) ("It is only when the decision of a public defender impacts significantly upon the court that any inquiry should be made."); *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980) ("Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.").

[28] *Perez v. State*, 521 P.3d 592, 598 (Alaska App. 2022).

[29] Alaska Code Jud. Conduct Canon 1; *see, e.g.*, *Bunton v. Alaska Airlines, Inc.*, 482 P.3d 367, 373-74 (Alaska 2021); *Alvarez-Perdomo v. State*, 454 P.3d 998, 1008 (Alaska 2019).

[30] *See, e.g.*, *Powell v. Alabama*, 287 U.S. 45, 71 (1932) ("[T]he failure of the trial court to make an effective appointment of counsel was . . . a denial of due process."); *Moreau v. State*, 588 P.2d 275, 283-84 & n.27 (Alaska 1978) (imposing on

with the rules of professional conduct is a basic component of effective assistance.[31]
Courts must inquire when an apparent conflict of interest exists to ensure that the
defendant receives conflict-free representation.[32] To ensure conflict-free
representation, courts may disqualify an attorney or condition continued representation
upon a defendant's waiver of a conflict that is waivable under the ethics rules.[33]

We agree with the superior court that effective representation requires
more than simply "show[ing] up for hearings." When the court determined the Agency

---

trial court obligation to advise defendants of "potential dangers of representation by
counsel with a conflict of interest" and obtain voluntary waiver of constitutional
protections for such representation to proceed (quoting *State v. Olsen*, 258 N.W.2d 898,
906 (Minn. 1977))); *Risher v. State*, 523 P.2d 421, 423 (Alaska 1974) ("The mere fact
that counsel represents an accused does not assure this constitutionally-guaranteed
assistance. The assistance must be 'effective' to be of any value." (quoting *McCracken
v. State*, 521 P.2d 499, 508 (Alaska 1974))).

[31] *See Wood v. Georgia*, 450 U.S. 261, 271 (1981).

[32] *See, e.g.*, *id.* at 272 (noting that while it was unclear if "actual conflict of
interest was present," record demonstrated "[t]he *possibility* of a conflict was
sufficiently apparent . . . to impose upon the court a duty to inquire further" (emphasis
in original)); *Perez*, 521 P.3d at 598 ("Trial courts play an important role in
safeguarding th[e] constitutional right [to the assistance of counsel in all critical stages
of a criminal prosecution]."); *State v. Peart*, 621 So. 2d 780, 787 (La. 1993) ("If the
trial court has sufficient information before trial, the judge can most efficiently inquire
into any inadequacy [of representation] and attempt to remedy it."); *cf. Cuyler*, 446 U.S.
at 347 ("Unless the trial court knows or reasonably should know that a particular
conflict exists, the court need not initiate an inquiry.").

[33] *See Wheat v. United States*, 486 U.S. 153, 159-60 (1988) (requiring trial
court to take appropriate measures to protect criminal defendants from attorney's
conflict of interest); *Daniels v. State*, 17 P.3d 75, 82 (Alaska App. 2001) ("[A]
defendant's right to waive their attorney's conflict of interest is not absolute; '[the]
courts have an independent interest in ensuring that criminal trials are conducted within
the ethical standards of the profession and that legal proceedings appear fair to all who
observe them.' " (alteration in original) (quoting *United States v. Locascio*, 6 F.3d 924,
931 (2d Cir. 1993))); *Perez*, 521 P.3d at 599 (observing trial court failed to fulfill duty
to safeguard defendant's constitutional right to counsel).

was failing to provide representation consistent with its ethical and constitutional obligations, it instructed the Agency to take certain steps to remedy the situation. Concluding the Agency had a conflict of interest, the court ordered the Agency to withdraw and appointed OPA. Because the court had a duty to ensure Mathes's rights were protected, it did not violate the separation of powers doctrine by doing so.

In *Daniels v. State* the court of appeals determined the trial court abused its discretion by disqualifying a public defender because he had represented a witness ten years earlier in an unrelated matter.[34] The defense strategy involved suggesting that the witness had committed the crime being prosecuted.[35] The client waived any conflict of interest due to the past representation, and after consulting with independent counsel, the witness did not perceive any conflict, but the court granted the prosecution's motion requiring the public defender to withdraw.[36] The court of appeals noted that although indigent defendants do not have the right to demand a particular attorney, "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."[37] Because the conflict was waivable and neither client nor their attorneys claimed that a conflict of interest existed, the court of appeals reversed the trial court's withdrawal order.[38]

OPA's claim that the superior court gave Mathes a "choice" of counsel mischaracterizes the court's order. The court ordered the Agency to advise affected clients that they would have to waive any claim of ineffective assistance of counsel until a permanent attorney was assigned to their case if they wished to remain represented by

---

[34] *Daniels*, 17 P.3d at 78, 86-87.

[35] *Id.*

[36] *Id.* at 78-79.

[37] *Id.* at 82 (quoting *United States v. Rogers*, 9 F.3d 1025, 1031 (2d Cir. 1993)).

[38] *Id.* at 79, 87.

the Agency. The court ordered the Agency to withdraw from any case in which the client did not waive the conflict. Agency clients were not given a choice of preferred counsel as OPA suggests.

Nor did the superior court "prevent[] transfer" back to the Agency as OPA alleges. The Agency withdrew from Mathes's cases, as ordered, because she did not waive the conflict of interest. OPA did not give the court any basis to transfer Mathes's cases back to the Agency.

OPA challenges the court's conclusions that the affected clients had been inadequately represented for months and that the Agency's "floating" approach would result in further inadequate representation. But as the court explained in its order denying OPA's motion to vacate its appointment, neither OPA nor the Agency presented any evidence to suggest that representing Mathes was no longer beyond the Agency's capacity. Although the court was satisfied by the temporary attorney's stated intention to actively represent the clients in the four cases to which he was assigned, neither he nor the Agency gave the court similar assurances in Mathes's case. The record before the court made clear that Mathes's former attorney had not actively worked her case for at least two months before her resignation and the Agency could not assign an attorney to actively work on her case for another three months. Such delay was "excessive" when Mathes had been charged three years prior and "was pushing to vindicate her right to a speedy trial."

OPA argues that the superior court exceeded its authority by requiring defendants to waive their rights to claim ineffective assistance of counsel. The superior court ordered that the clients "waive their right to the effective assistance of counsel" if they wished to remain represented by the Agency, rather than specifying the more usual waiver of speedy trial. The court determined that the affected clients would not have meaningful representation for nearly five months and that the delay would conflict with

their speedy trial rights under the state and federal constitutions.[39]  It also concluded that the delay was likely to be far beyond the 120-day trial deadline in Alaska Criminal Rule 45.[40]  But criminal defendants can and often do waive their speedy trial rights.[41]  The delay resulting from the Agency's plan thus required clients waive their speedy trial rights if they wanted to remain with the Agency until a new attorney was hired. The superior court's somewhat inartful language does not amount to a reversible error.

OPA also argues that the superior court's interpretation of *Perez v. State* was flawed and *Perez* should not be extended to allow courts to intrude into the management decisions of executive agencies.[42]  It argues that *Perez* "presented a different situation" because it involved a client to whom no attorney was assigned for five months, while the clients here had individual counsel at all times.[43]  From this OPA argues that the superior court erred by concluding that *Perez* required an attorney to be "actually" assigned to the case.

---

[39]      U.S. Const. amend. VI; Alaska Const. art. I, § 11.

[40]      Alaska R. Crim. P. 45(b) ("A defendant charged with a felony, a misdemeanor, or a violation shall be tried within 120 days.").

[41]      *See, e.g.*, *Glasgow v. State*, 469 P.2d 682, 686-87 (Alaska 1970) (concluding court cannot infer generally waiver of constitutional speedy trial right from mere silence but defendant may "knowingly and intelligently waive[] such constitutional rights"); *Rutherford v. State*, 486 P.2d 946, 950 (Alaska 1971) (same); *Conway v. State*, 707 P.2d 930, 934 (Alaska App. 1985) (noting criminal defendant may "waive or under certain circumstances forfeit the right to assert a speedy trial violation"); *James v. State*, 567 P.2d 298, 300 (Alaska 1977) (concluding defendant forfeited right to complain of speedy trial rule violation by failing to complain before voir dire); *Trudeau v. State*, 714 P.2d 362, 365-66 (Alaska App. 1986) (concluding superior court did not err by finding defendant forfeited right to complain of speedy trial violation by waiting until after jury selection); *Alaska Pub. Def. Agency v. Super. Ct.*, 530 P.3d 604, 609-10 (Alaska App. 2023) (holding continuance under Rule 45 requires consent of defendant).

[42]      *Perez v. State*, 521 P.3d 592 (Alaska App. 2022).

[43]      *See id.* at 595-97.

Contrary to OPA's claim, however, *Perez* did not hold only that assigning an individual attorney to a defendant was required. In *Perez* the defendant had "no attorney keeping track of his case between pretrial hearings, no attorney communicating with him outside these hearings, no attorney reviewing the discovery and discussing it with him, and no attorney assisting him with other pretrial matters" for five months.[44] Under these circumstances, the court of appeals held that the superior court "had an affirmative duty to act [to safeguard the defendant's constitutional right to counsel] when it became clear that [he] had no attorney assigned" and that the "conflict issues . . . were not being timely resolved."[45]

In both *Perez* and Mathes's case, the court was concerned that a defendant was not receiving effective representation. When it is apparent to the court that a defendant is not receiving effective representation, the court has an affirmative duty to intervene.[46]

## B. The Superior Court Did Not Err By Appointing OPA.

OPA disagrees with the superior court's conclusion that a capacity-based conflict is a conflict of interest under the enabling statute authorizing its appointment.[47] OPA argues that the legislative history of AS 44.21.410(a)(4) and 30 years of practice show that it was created to represent indigent defendants when the Agency has an "actual" conflict of interest, such as in cases of codefendant representation, not as an "overflow" agency to fill in when the Agency is "over capacity." It argues that the superior court therefore erred by appointing it when it found that Mathes could not be represented by the Agency due to its lack of capacity.

---

[44]    *Id.* at 598.

[45]    *Id.*

[46]    *See id.*

[47]    *See* AS 44.21.410(a)(4) (requiring OPA to represent indigent persons that qualify for Agency representation when Agency has conflict of interest).

**1.      Lack of capacity can be a disqualifying conflict of interest.**

Rule of Professional Conduct 1.7(a) provides that a lawyer "shall not represent a client if the representation involves a concurrent conflict of interest." Subsection (a)(2) of the rule goes on to define a concurrent conflict of interest as arising when there is "a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."[48]

Rule 1.1(a) requires attorneys to provide "competent" representation to their clients. Competent representation entails the "thoroughness and preparation reasonably necessary for the representation."[49] And under Rules 1.3 and 3.2, attorneys have a duty to "act with reasonable diligence and promptness in representing a client"[50] and to "make reasonable efforts to expedite litigation consistent with" a client's interests.[51] Commentary to Rule 1.3 specifies that "[a] lawyer's work-load must be controlled so that each matter can be handled competently."

A situation in which an attorney is overloaded with cases compromises the attorney's ability to comply with relevant rules of professional conduct and may deny a defendant effective assistance of counsel.[52] When an attorney is assigned too many cases, the risk increases that the attorney's ability to represent any one client may be limited by responsibilities to others. As a caseload increases, the attorney's ability to bring to each case the thoroughness and preparation necessary to provide competent

---

[48]      Alaska R. Prof. Conduct 1.7(a)(2).

[49]      Alaska R. Prof. Conduct 1.1(a).

[50]      Alaska R. Prof. Conduct 1.3.

[51]      Alaska R. Prof. Conduct 3.2.

[52]      *See Carrasquillo v. Hampden Cnty. Dist. Cts.*, 142 N.E.3d 28, 48-49 (Mass. 2020) (concluding same based on Massachusetts's Professional Conduct Rules, which are worded nearly identically).

representation may diminish. And as the number of assigned cases increases, the attorney's ability to promptly and diligently expedite any one case may decrease.

Courts from other jurisdictions have also concluded that a shortage of public defenders and the resulting excessive caseloads can amount to a conflict of interest because the attorneys must choose between the rights of their clients.[53] Rule 1.7(a)(2)'s plain language, when read in conjunction with the other professional rules' requirements, makes clear that a public defender agency's inability to provide effective assistance because of a lack of attorneys or hours can amount to a conflict of interest.

OPA asserts that an evidentiary hearing should be required when the Agency alleges it is "over capacity" and asks that we establish such a procedure. It argues that because the superior court did not hold an evidentiary hearing, we should vacate its order. But OPA declined the court's invitation to have an evidentiary

---

[53]    *See, e.g.*, *In re Edward S.*, 92 Cal. Rptr. 3d 725, 746-47 (Cal. App. 2009) ("[A] conflict of interest is inevitably created when a public defender is compelled by his or her excessive caseload to choose between the rights of the various indigent defendants he or she is representing."); *People v. Roberts*, 321 P.3d 581, 589 (Colo. App. 2013) (same); *In re Ord. on Prosecution of Crim. Appeals by Tenth Jud. Cir. Pub. Def.*, 561 So. 2d 1130, 1135 (Fla. 1990) ("When excessive caseload forces the public defender to choose between the rights of the various indigent criminal defendants he represents, a conflict of interest is inevitably created."); *Carrasquillo*, 142 N.E.3d at 48-49 ("Requiring defense attorneys to take on more clients than they can reasonably handle may impede their ability to meet [the] obligation" to "act with reasonable diligence and promptness in representing a client" and "may create concurrent conflicts of interest."); *United States ex rel. Green v. Washington*, 917 F. Supp. 1238, 1275 (N.D. Ill. 1996) ("When an agency such as [the Office of the State Appellate Defender] is appointed to more cases than it can timely handle, . . . conflicts of interest are necessarily created as a surfeit of clients compete for the scarce resources of available attorney time and attention."); *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 608 (Mo. 2012) (en banc) (same).

hearing[54] and the superior court made adequate findings. Because the court's process and factual findings are sufficient for our review, we see no need to require more.

### 2. Alaska Statute 44.21.410(a)(4) requires OPA to take a case if the Agency has a conflict of interest due to a capacity conflict.

Alaska Statute 44.21.410(a)(4) requires OPA to provide legal representation "in cases involving indigent persons who are entitled to representation [by the Agency] and who cannot be represented by the public defender agency because of a conflict of interests." The statute does not define "conflict of interests." The superior court reasoned that "[t]he existence of a conflict at the time of withdrawal is enough to justify an OPA appointment" because "[t]he statute does not inquire about the nature of a conflict, or whether the conflict is temporary."

OPA contends that a conflict of interest due to lack of capacity is not the sort of conflict contemplated by the legislature when it enacted AS 44.21.410(a)(4). It argues that a "conflict of interest" under AS 44.21.410(a)(4) "has always meant an actual/legal conflict arising under the Professional Conduct Rules — most often Rule 1.7."

OPA seems to suggest that the "actual" conflicts of interest in AS 44.21.410(a)(4) are limited to conflicts presenting adverse representation "such as multi-defendant cases." It points to legislative history and "the history of the agencies' transactions" to support its interpretation. But the plain language of the statute says nothing about the type of conflict that authorizes OPA's appointment. And OPA falls well short of overcoming its heavy burden to show that the legislature intended to give the term "conflict of interests" OPA's preferred meaning.

---

[54] OPA later moved for an evidentiary hearing along with its motion for reconsideration, which the court denied because new evidence cannot be introduced in connection with a motion to reconsider.

"In the absence of a [statutory] definition, we construe statutory terms according to their common meaning[;] [d]ictionaries provide a useful starting point for this exercise."[55] "The plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[56] "If the language is 'clear and unambiguous,' then 'the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent.' "[57]

The plain language of the statute does not exclude conflicts based on lack of capacity. Black's Law Dictionary defines a "conflict of interest" as "[a] real or seeming incompatibility between two interests that one possesses or is obligated to serve" or "[a] real or seeming incompatibility between the interests of two of a lawyer's clients, such that the lawyer is disqualified from representing both clients if the dual representation adversely affects either client or if the clients do not consent."[58] Merriam-Webster defines the term as "a conflict between competing duties."[59] And the American Heritage Dictionary defines it as "[a] conflict between a person's private interests and public obligations."[60] The Restatement (Third) of the Law Governing Lawyers defines a conflict of interest as a circumstance in which "there is a substantial risk that the lawyer's representation of the client would be materially and adversely

---

**55**    *State, Dep't of Fam. & Cmty. Servs., Off. of Child.'s Servs. v. Karlie T.*, 538 P.3d 723, 730 (Alaska 2023) (alterations in original) (quoting *State v. Recall Dunleavy*, 491 P.3d 343, 359 (Alaska 2021)).

**56**    *Id.* (quoting *State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011)).

**57**    *Guerin v. State*, 537 P.3d 770, 778 (Alaska 2023) (quoting *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019)).

**58**    *Conflict of Interest*, BLACK'S LAW DICTIONARY (12th ed. 2024) (citing MODEL RULES OF PRO. CONDUCT r. 1.7(a) (AM. BAR ASS'N 2013)).

**59**    *Conflict of Interest*, MERRIAM-WEBSTER'S DICTIONARY (2024).

**60**    *Conflict of Interest*, AMERICAN HERITAGE DICTIONARY (5th ed. 2016).

affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person."[61]  It does not distinguish between particular kinds of conflicts.[62]

Other authorities from the time AS 44.21.410 was enacted are in agreement.  The statute was passed in 1984.[63]  Just one year earlier, the American Bar Association (ABA) adopted the Model Rules of Professional Conduct.[64]  Those rules identified impermissible conflicts of interest as situations in which representation of a client "will be directly adverse to another client" or "may be materially limited by the lawyer's responsibilities to another client."[65]  The 1990 edition of Black's Law Dictionary incorporated the ABA's standard into its definition of "conflict of interest," explaining that "[t]he Code of Professional Responsibility and Model Rules of Professional Conduct set forth standards for actual or potential conflicts of interest between attorney and client."[66]  None of these definitions suggests that the term refers only to a subsection of all conflicts of interest.  Given that the plain language of AS 44.21.410(a)(4) does not exclude particular types of conflicts of interest, OPA bears a "heavy burden" to demonstrate the legislature intended such an exclusion.[67]

OPA does not satisfy that burden.  OPA was established in the wake of lawsuits challenging the court system's former practice of appointing private attorneys

---

[61]    RESTATEMENT (THIRD) OF THE L. GOVERNING LAWYERS § 121 (AM. L. INST. 2000).

[62]    *See id.*

[63]    Ch. 55, § 1, SLA 1984.

[64]    Model Rules of Professional Conduct, 69 A.B.A.J. 1592, 1671 (1983).

[65]    *Id.* at 1678.

[66]    *Conflict of Interest*, BLACK'S LAW DICTIONARY (6th ed. 1990).

[67]    *See Guerin v. State*, 537 P.3d 770, 778 (Alaska 2023).

to represent indigent defendants when the Agency had a conflict of interest.[68] The court system was already contracting with private counsel at great cost and faced even greater expenses if the lawsuits were successful.[69] OPA was proposed as cost-savings solution "to handle many cases where the public defender had a conflict."[70] It could "pass cases back and forth and avoid conflict situations."[71] The governor's transmittal message to the legislature declared that OPA would be "empowered to provide public guardian and guardian ad litem services as well as legal representation to indigent persons, when authorized by existing statutes."[72] He hailed the proposed agency as "permit[ting] efficient sharing of resources, including space, personnel, clerical support, and other administrative costs."[73]

This legislative history only bolsters our conclusion that "a conflict of interests" in AS 44.21.410(a)(4) means *all* conflicts of interests and that OPA has not carried its burden to show that it means only certain conflicts. Legislative deliberations and related testimony mainly discussed the fiscal benefits of creating an agency to handle cases where the Agency had a conflict, not what constituted a conflict.[74] The

---

[68] *See Wood v. Super. Ct.*, 690 P.2d 1225 (Alaska 1984); *DeLisio v. Alaska Super. Ct.*, 740 P.2d 437 (Alaska 1987).

[69] Minutes, S. Fin. Comm. Hearing on S.B. 312, 13th Leg., 2d Sess. (Feb. 2, 1984) (testimony of Arthur H. Snowden, Admin. Dir., Alaska Ct. Sys.).

[70] Minutes, S. Fin. Comm. Hearing on S.B. 312, 13th Leg., 2d Sess. (Apr. 27, 1984) (statement of Sen. Albert Adams, Chair).

[71] Minutes, S. Fin. Comm. Hearing on S.B. 312, 13th Leg., 2d Sess. (Feb. 2, 1984) (testimony of Arthur H. Snowden, Admin. Dir., Alaska Ct. Sys.).

[72] 1983 S. Journal 1251.

[73] *Id.*

[74] *See* Minutes, S. Fin. Comm. Hearing on S.B. 312, 13th Leg., 2d Sess. (Apr. 27, 1984) (comments of Rep. Terry Martin); Minutes, House Jud. Comm. Hearing on S.B. 312, 13th Leg., 2d Sess. (Mar. 7, 1984) (testimony of Karla Forsythe, Gen. Counsel, Alaska Ct. Sys.).

governor's transmittal message similarly focused on the cost savings and more efficient provision of representation for indigent criminal defendants that would result from OPA's creation without mention of the type of conflict that would lead to OPA's appointment.[75]

OPA also argues that it and the Agency have historically understood "conflicts" to only mean "actual conflicts" involving their clients, despite having no memorandum documenting their understanding. OPA invites us to adopt its limited definition of "conflict of interests" based on the agencies' practice. But such a practice cannot overcome the statute's plain language and legislative history, which do not reveal any legislative intent to give the phrase "conflict of interests" a meaning that would exclude conflicts due to capacity.

Alaska Statute 44.21.410(a)(4)'s plain language requires OPA to provide legal representation to indigent persons who cannot be represented by the Agency due to a conflict of interests. Conflicts of interests include those resulting from the Agency's lack of capacity to provide effective representation.[76]

## V.    CONCLUSION

We AFFIRM the superior court's order appointing OPA to represent Mathes.

---

[75]    *See* 1983 S. Journal 1250-51. The message only mentioned conflicts of interest once, describing Alaska's then-current practice of appointing private attorneys. *Id.* at 1250 ("The court system, by statute . . . appoints and compensates attorneys who represent indigent persons when the public defender agency cannot provide an attorney because of a conflict of interests.").

[76]    OPA also argues the court should have appointed counsel under Alaska Administrative Rule 12(e) because it found the Agency had a capacity conflict. But because the superior court did not err by intervening and appointing OPA to represent Mathes under AS 44.21.410(a)(4), Rule 12(e) does not apply.